UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES B. MCCARTT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-318-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KELLOGG USA, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendants Kellogg USA, Inc.'s and Kellogg Sales Company's ("Kellogg") motion *in limine* requesting this Court to exclude at trial an allegedly "ageist" comment made by Zone Manager Kevin Grzanka regarding Plaintiff James B. McCartt.  [Record No. 49]  The defendants argue that the remark is irrelevant and unfairly prejudicial under Rules 402 and 403 of the Federal Rules of Evidence because it was isolated and ambiguous.  [Record No. 49-1, pp. 5, 7]  The plaintiff counters that the comment is relevant and that it would not unfairly prejudice the defendants because of the position of the speaker and the discriminatory content of the statement.  [Record No. 54, pp. 1, 3]  For the reasons discussed below, the motion *in limine* will be denied.

## I.

Kellogg USA, Inc. and Keebler Foods Company ("Keebler") manufacture food products.[1]  [Record No. 48-1, p. 5]  McCartt was hired by Keebler in 1979 as a Territory

---

1    *See Keebler Foods Co. IPO*, NASDAQ, *available at*
http://www.nasdaq.com/markets/ipos/company/keebler-foods-co-8859-4717.

Manager ("TM") for the Lexington, Kentucky area.  [Record No. 53-2, p. 5]  Kellogg acquired Keebler in 2000.[2]  Following that acquisition, McCartt's title was changed to the Retail Sales Representative ("RSR") of District 797, which includes the greater Lexington area.  [Record No. 53-2, p. 7]  The RSR position was functionally similar to the TM position, except for an emphasis on sales starting in April 2011.  [*Id.*, pp. 7, 10, 15, 19; Record No. 48-6, "Job Profile"]  RSR duties included: merchandising orders, making incremental sales, building displays, and managing merchandisers.  [Record No. 53-2, pp. 8–9]

RSRs' direct supervisors were District Managers, whose supervisors, in turn, were Senior Retail Managers (or Zone Managers).  [Record No. 53-2, pp. 11–12]  District Managers performed mid-year assessments of the RSRs.  [Record No. 53-2, p. 15]  McCartt's mid-year evaluation in 2012 demonstrated that he was using only 68% of his variable labor and that he was $19,000 behind budget.  [*Id.*, p. 18; Record No. 48-11, "Performance Development Plan"]  McCartt achieved only 91.7% of his sales goals in 2012.  However, in the final month of 2012, he was the highest-ranked RSR in his district.  [Record No. 48-10, "Period 12, 2012 Regional Score Card"]

In early 2013, Kellogg restructured its sales force, combining its "Morning Foods" sales force with its "Snacks" sales force.  [Record No. 48-12, ¶ 4, "Anderson Decl."]  As a result, fewer overall RSR roles were available.  In January, all the Zone Managers convened in Chicago to assess the RSR sales force.  [*Id.*, ¶ 5]  They were not told the reasons for the assessment.  [*Id.*]  As part of this process, Zone Managers assessed each RSR in his or her

---

2       Greg Winter, *Kellogg Agrees to Buy Keebler Foods for $3.86 Billion*, THE NEW YORK TIMES (October 27, 2000), *available at* http://www.nytimes.com/2000/10/27/business/kellogg-agrees-to-buy-keebler-foods-for-3.86-billion.html.

zone according to technical and Kellogg Business Leader Model ("KBLM") competencies, giving each a score of one to five.  [*Id.*]  The Zone Managers were instructed to rely on employee "scorecards," which contained objective figures, as well as their personal experience with the RSRs.  [Record No. 48-14, ¶ 5, "Grzanka Decl."]

Next, the Human Resources ("HR") department created pools of RSRs for comparison purposes.  [Record No. 48-12, ¶ 6]  Essentially, HR compared all Snacks RSRs who had over 50% of their assigned stores within 25 miles of a particular Morning Foods RSR's residence.  [*Id.*]  The RSR with the lowest average score in each pool was displaced. [*Id.*]  Megan Anderson was the HR person responsible for pooling assessments in the Cincinnati Zone which included McCartt.  [*Id.*, ¶ 8]  Because Grzanka's assessment of McCartt was the lowest in his pool, HR decided to terminate him.  [*Id.*, ¶ 9]

In February 2013, interim District Manager Andrew Hart and Zone Manager Kevin Grzanka met with McCartt to inform him that a rumored "list of targeted employees" did not exist.  [Record No. 53-2, p. 20]  During that time, McCartt's prior District Manager, John Taylor, informed McCartt of a comment by Grzanka regarding the plaintiff.  [Record No. 53-2, p. 23]  The conversation between Grzanka and Taylor had occurred during Taylor's mid-year evaluation (summer 2012), after Taylor remarked positively on McCartt but stated that he could be more "aggressive" about displays.  [Record No. 53-13, pp. 36–37, "Taylor Deposition"]  In his deposition, Taylor alleges that Grzanka responded, "Mr. McCartt is too old and set in his ways to make the changes necessary.  We need to, more or less, move in different directions."  [*Id.*, p. 37]

On March 5, 2013, one month after Taylor informed McCartt of this statement, Hart and Grzanka informed McCartt of his termination, which was effective April 12, 2013. [*Id.*, p. 22; Record No. 48-17]  The plaintiff was over sixty years-old at the time of his termination. [Record No. 1-6, p. 3, ¶ 9]

McCartt claims age-related discrimination and retaliation by Kellogg in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.*, and the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344, *et seq.* [Record No. 1-6, pp. 3−9] He also alleges that he is owed back pay and overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq.*, and the Kentucky wage statutes, KRS 337.010, *et seq.* [*Id.*, p. 9−11]  In addition, he pursues a public policy claim premised on the ADEA and FLSA violations. [*Id.*, p. 12]

The parties have completed discovery and are preparing for trial. [*See* Record Nos. 59−66.] Through their motion *in limine*, the defendants seek to exclude at trial the statement allegedly made by Kevin Grzanka to John Taylor. [Record No. 49]  They argue that the statement is both irrelevant and unfairly prejudicial. [Record No. 49-1, pp. 5, 7]

## II.

While the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to a district court's inherent authority to manage the course of trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Although a party can ask the Court to make an *in limine* ruling on evidentiary matters, it is within the Court's discretion to do so. In short, there is no right to an *in limine* ruling. *Huddleston v. United States*, 485 U.S. 681, 688−89 (1988). In fact, a ruling on a motion *in limine* is nothing more than a

preliminary opinion which allows the parties to better formulate their trial strategy. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994); *Gresh v. Waste Servs. of America*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) ("The district judge . . . has the sound discretion to alter or amend a previous *in limine* ruling at trial."). A court may "exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds." *Indiana Ins. Co. v. Gen. Elec., Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Unless this high standard is met, rulings will be deferred until trial. *Id.*

Rule 402 of the Federal Rules of Evidence sets forth the general rule that relevant evidence is admissible, subject to certain exceptions, and irrelevant evidence is not admissible. *See* Fed. R. Evid. 402. "Relevant evidence" is defined in Rule 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Both the Supreme Court and the Sixth Circuit have noted that the standard set forth in Rule 401 is a liberal one. *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, (1993); *Hildebrand v. Bd. of Trs. of Mich. State Univ.*, 607 F.2d 705, 713 n.15 (6th Cir. 1979)).

However, Rule 403 of the Federal Rules of Evidence provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Evidence is not excluded merely because it is damaging or prejudicial to a defendant's case; rather, it must be unfairly prejudicial. *See United States v. Bonds*, 12 F.3d 540, 567 (6th Cir.

1993).  Evidence that is prejudicial only in the sense that it portrays the defendant in a negative light is not unfairly prejudicial for purposes of Rule 403.  *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006) (citing *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996)).  Moreover, to warrant exclusion, any danger of unfair prejudice posed by the evidence must *substantially* outweigh its probative value.  Fed. R. Evid. 403.  The Sixth Circuit has found this requirement significant.  *See Koloda v. Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983).  Rule 403 is not concerned with "the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis."  *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986).

### III.

The defendants assert that Kevin Grzanka's remark to Taylor is isolated and ambiguous, requiring exclusion under Rules 402 and 403.  [Record No. 49-1, p. 6]  The plaintiff counters that, while the remark may be isolated,[3] it is not ambiguous.  [Record No. 54, p. 1]  In essence, he contends that the statement is sufficiently probative so that a jury should hear it.  [*Id.*, p. 4]

### A.       Grzanka's Statement is Relevant

Kellogg argues that Grzanka's remark is irrelevant under Rule 402 of the Federal Rules of Evidence.  "Derogatory remarks by an immediate supervisor with meaningful

---

3       The plaintiff points to another incident where Grzanka allegedly demonstrated age-bias.  [Record No. 54, p. 2]  Taylor states that during an interview of another potential employee, Grzanka asked the employee his age.  [Record No. 53-13, pp. 52−53]  The interviewee was not hired.  Because this was only a *question* unrelated to the plaintiff that occurred over a year before the plaintiff's termination decision, it is not relevant for determining whether the statement at issue was isolated.  *See Wilson v. Reliance Trading Corp. of Am.*, 208 F.3d 216, 2000 WL 282357, *1 (6th Cir. 2000).

influence on an employment decision may sometimes imply discrimination in the decision process." *Covington v. MCI Worldcom Network Servs., Inc.*, 93 F. App'x 837, 842 (6th Cir. 2004).  However, an isolated and ambiguous remark unrelated to a suspect decision cannot establish discrimination.  *Id.* at 843.  In assessing the relevance of an allegedly-discriminatory remark, the Court looks to: (i) the declarant; (ii) the subject of the statement; (iii) the nature of the statement; and (iv) the time that elapsed between the statement and the adverse employment decision.  *See, e.g.*, *Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 156−57 (6th Cir. 1988).

### 1.      The Declarant and the Subject

Discriminatory statements are more likely to be relevant if they are made by agents involved in the decision-making process and are specific to the plaintiff.  For instance, in *Chappell v. GTE Products Corp.*, the Sixth Circuit upheld the district court's exclusion of a supervisor's statement to another employee that "surely you must have noticed the young people taking over up front."  803 F.2d 261, 268 n.2 (6th Cir. 1986).  It also upheld the district court's exclusion of the statement "[d]on't categorize me in that with you," said by a supervisor in response to an employee's comment that he and the supervisor were "old-timers."  *Id.*  The court found these statements to be "too abstract, in addition to being irrelevant and prejudicial . . ."  *Id.*  Similarly, in *Schrand v. Fed. Pac. Elec. Co.*, the court found that the testimony of two former employees regarding the circumstances of their terminations was not relevant to the question of whether the plaintiff was terminated for age-related reasons.  851 F.2d 152, 156−57 (6th Cir. 1988); *see also Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir. 1984).  Further, in *Covington*, the court found that discriminatory

- 7 -

statements by a co-worker and a supervisor were irrelevant because they did not substantially influence the employment decision, which was made by another supervisor.  93 F. App'x at 842.

Grzanka's statement is distinguishable from the statements in *Chappell*, *Schrand*, and *Covington*.  In those cases, the statements were not made by agents who exerted a meaningful influence over the adverse employment actions experienced by the plaintiffs.  In both *Chappell* and *Schrand*, the statements were not directed at the plaintiffs, while in *Covington,* the statements were made by a non-supervisor and by a supervisor who did not make the adverse employment decision.  803 F.2d at 268 n.2; 851 F.2d at 156−57; 93 F. App'x at 842.

Kellogg argues that Grzanka's statement is analogous to the statements in these cases because Grzanka did not "participate in the decision to terminate" the plaintiff, as that decision was made by HR.  [Record No. 49-1, p. 7]  This argument is not persuasive.  Grzanka, alone, filled-out the assessment that determined McCartt's status in relation to other RSRs in his area.  [Record No. 48-12, ¶ 8]  While Grzanka may not have been aware of the ultimate use of the assessment, it was that "score" that determined whether McCartt would be terminated.[4]  This is dissimilar to *Chappell* and *Schrand*, where the declarants did not provide evaluations of the plaintiffs.  803 F.2d at 268 n.2; 851 F.2d at 156−57.  It is closer to *Covington*, because the supervisor in that case discussed the adverse employment decision with the decision-maker.  93 F. App'x at 842 (labeling the supervisor as a "contributor to the

---

[4]      A supervisor would be aware that an assessment could have some bearing on an employee's position with the company.

promotion process").    However, the primary decision-maker in *Covington* actually interviewed the plaintiff and made his decision with only the assistance of the allegedly-biased supervisor, whereas in the present action, the decision-maker (HR) relied entirely on Grzanka's evaluation of the plainitff in reaching its decision.  *Id.*; *cf. Geiger v. Tower Automotive*, 579 F.3d 614, 624 (6th Cir. 2009) (focusing on how plaintiff failed to show that the declarant was consulted about the plaintiff's qualifications).[5]    [Record No. 48-12, ¶ 8] Thus, the first two factors weigh in favor of a finding that Grzanka's statement is relevant under Rule 402.

### 2.    The Nature and Content of the Statement

Kellogg also contends that Grzanka's statement is ambiguous.  [Record No. 58, p. 2] In particular, it notes that Taylor was confident that Grzanka did not say that they should "get rid" of McCartt.  [*Id.*; *referring to* Record No. 53-13, p. 38]  However, Taylor stated that he was "shocked" and "taken aback" by the statement because his *impression* was that Grzanka wanted him to get rid of McCartt.  [*Id.*, pp. 39–40]  In fact, he was so "bothered" and "upset" by the interaction that he informed another District Manager and an employee about the conversation.  [*Id.,* p. 40]  While Taylor's impression of the statement is not dispositive, it certainly gives context for the statement.  A reasonable juror could conclude that Grzanka's statement indicated a desire to move in a direction that would no longer include McCartt's "old" and "set" ways, as Taylor concluded.

---

5    *See also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998) (finding biased statements by those "in a position to influence the alleged decision" to be relevant for determining whether discrimination occurred).  While the defendants correctly note that this case is distinguishable from the present action because it involved the statements of multiple high-level officials within the company, its reasoning is still instructive.  [Record No. 58, p. 5]

Moreover, Grzanka's remark is unlike the ambiguous statements in *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 n.2 (6th Cir. 1986).  In that case, the first statement was merely an observation that younger people were being employed—it did not suggest any age animus on the part of the declarant.  *Id.*  And the second statement, while making it clear that the speaker did not wish to be considered "old," was not followed by anything that could be construed as related to an adverse employment decision.  *Id.*  Here, the second part of Grzanka's statement regarding "moving in different directions," could reasonably be construed as related to terminating people like McCartt.

Kellogg also points to *Phelps v. Yale Sec., Inc.*, to demonstrate that the content of Grzanka's statement is ambiguous.  986 F.3d 1020 (6th Cir. 1993).  [Record No. 58, p. 3]  Phelps is an age discrimination case in which the Sixth Circuit affirmed the district court's grant of judgment notwithstanding the verdict ("JNOV") to the defendant-employer.  *Id.* at 1026.  It did not involve exclusion of the statements at issue.  Thus, *Phelps*' reasoning is only persuasive regarding the issue of exclusion under Rule 402 of the Federal Rules of Evidence.  In any event, the court's reasoning in *Phelps* does not help Kellogg.  In *Phelps*, a supervisor told the plaintiff that her fifty-fifth birthday was a "cause for concern."  *Id.* at 1025.  Grzanka's statement is more indicative of discriminatory animus than that statement because his comment took place during a discussion between supervisors of the plaintiff's qualifications, whereas the statement in *Phelps* did not.  [Record No. 53-13, pp. 36–37]  Further, Grzanka expressed his personal belief that the company needed to "move in different directions."  Conversely, in *Phelps*, the declarant could have been expressing a personal belief about the company *or* commenting on something unrelated to work.  Because

- 10 -

Grzanka's alleged statement is not ambiguous, this factor weighs in favor of admitting it during trial.

### 3.    Temporal Connection

Kellogg asserts that ten months between the statement and the act of termination is too long to be relevant.  [Record No. 58, p. 3]  Kellogg fails to point to any case where a statement was *excluded for evidentiary purposes* solely because the time between its occurrence and the act of termination was too long.[6]  While ten months is substantial, it does not weigh so heavily against McCartt  as to overcome the factors weighing in his favor. Because Grzanka's statement was: (i) unambiguous, (ii) made by one with a meaningful influence on the termination decision, and (iii) spoke directly of the plaintiff, it is relevant for evidentiary purposes.

### B.    Grzanka's Statement is Not Unfairly Prejudicial

Kellogg claims that even if Grzanka's statement is relevant, its probative value is substantially outweighed by the risk of unfair prejudice.  [Record No. 49-1, p. 7]  The Court disagrees for many of the same reasons expressed in its relevance analysis.  For example, in *Chappell v. GTE Products Corp.*, the age-biased statements had minimal probative value because they did not relate specifically to the plaintiff and were not made by persons with an

---

6       *See, e.g.*, *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002) (affirming summary judgment for the employer where the content of the statement was ambiguous and not proximate in time to the act of termination); *Phelps v. Yale Sec., Inc.*, 986 F.3d 1020, 1026 (6th Cir. 1993) (JNOV case finding that nearly one year was "too long" to have influenced the termination decision); *McDonald v. Union Camp Corp.*, 986 F.2d 1155, 1161 (6th Cir. 1990) (summary judgment case); *Rosso v. A.I. Root Co.*, 97 F. App'x 517, 520 (6th Cir. 2004) (summary judgment proper where statement was made nearly one year before termination of the plaintiff).  These cases are more appropriate for considering whether McCartt has pointed to sufficient evidence of discrimination to withstand summary judgment, rather than considering whether the evidence is relevant under Rule 402.

influence on his termination.  803 F.2d 261, 268 n.2 (6th Cir. 1986).  However, they tended to show a discriminatory animus on the part of the employer's agents.  Thus, the suggestion of animus might have caused a jury to decide improperly where there was virtually no link between the animus and the layoff.  *See id.*

Here, the probative value of Grzanka's statement is stronger than in *Chappell* because the remark was made by someone with influence on the plaintiff's termination and directly concerned the plaintiff.  In other words, there is a link between the animus and McCartt's termination, because the person with the alleged animus is the same person who assessed McCartt.  Therefore, the jury's consideration of animus would not concern an "improper basis."  *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986).

Further, the present action is unlike *Schrand*, where the Sixth Circuit held that the district court should have excluded the statements at issue.  851 F.2d 152, 156–57 (6th Cir. 1988).  In *Schrand*, the court focused on the fact that the testimony by former employees about their own terminations had no direct bearing on the issue to be decided; namely, the *plaintiff's* termination.  *Id.* at 156.  The court also reasoned that the testimony tended to confuse the issue by focusing the jury's attention on two "totally unrelated events": the *witnesses'* terminations.  *Id.*  Here, Grzanka's statement has a "direct bearing" on the issue to be decided because it relates to the plaintiff.  Further, it will not confuse the jury by focusing on "unrelated events."

Similarly, *Covington* reasoned that the age-biased statement by the co-worker was a prejudicial "smoking gun" because nothing connected the co-worker's comment with the decision-maker's notes.  93 F. App'x 837, 843 (6th Cir. 2004).  And the supervisor's age-

- 12 -

biased comment had little probative value in relation to its "inflammatory" nature because it was said by someone without "meaningful influence" on the employment decision. *Id.* at 842–43. Here, however, the comments were made by one who provided the full assessment for the decision-maker. [Record No. 48-12, ¶ 8] Because the link between the alleged animus and the termination decision is much closer, the probative value of Grzanka's remark is not substantially outweighed by the danger of unfair prejudice.

## IV.

Introduction of evidence relating to Grzanka's allegedly age-biased remark is relevant. Further, its probative value is not substantially outweighed by the danger of unfair prejudice. The statement was made by one with meaningful influence on the termination decision and directly concerned the plaintiff. Further, it was not ambiguous. Accordingly, it is hereby

**ORDERED** that the defendants' motion *in limine* [Record No. 49] is **DENIED**.

This 8th day of October, 2015.



Signed By:

*Danny C. Reeves*   DCR

United States District Judge